THE THODE FAGELUND. THE FRED B. DALZELL. THE LEWIS PULVER.

(Circuit Court of Appeals, Second Circuit. April 28, 1914.)

No. 223.

COLLISION (§ 71*)—VESSEL LYING AT WHARF—BERTHING OF STEAMSHIP.

The crushing of a barge lying at a wharf in Atlantic Basin by a steamship when entering a slip between such wharf and a pier *held* due solely to the fault of one of two tugs engaged in berthing the steamship, which was employed to hold her against the wind by means of a line to her quarter, but which, without orders or notice, stopped pulling when the ship turned to enter the slip, permitting her to swing against the barge.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. § 71.*]

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, holding the steamship Thode Fagelund solely responsible for damages sustained by libelant's barge L. H. Pflug, through being crushed by the steamship as the latter entered the slip between Pier 36 and Commercial (or Commerce) Wharf, Atlantic Basin, Brooklyn.

C. S. Haight, of New York City, for appellant.
Herbert Green, of New York City, for the Lewis Pulver.
C. C. Burlingham, of New York City, for the Fred B. Dalzell.
De Lagnel Berier, of New York City, for libelant.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The tide in the river was flood (though there was no tide in the basin) and a wind of from 25 to 30 miles an hour was blowing practically straight into the gap which leads from the river into the basin. Commerce Wharf runs along the further side of the basin, and Commerce street runs down to it at a place directly opposite the gap. From the sides of the basin, right and left there run out six piers, three on each side; between these and between the inner pair of piers and Commerce Wharf are slips for the accommodation of vessels. Between the heads of the piers is the waterway

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

from the gap to the entrances of the several slips. The slip for which the steamship was bound was the innermost one on the right-hand side going in, lying between Pier 36 and Commerce Wharf. As she entered the gap those who had charge of her berthing at first indicated she was to enter the left-hand slip, but before she had proceeded far advised her she was to enter the right-hand one. She proceeded in, made her turn around the end of Pier 36 and as she straightened out to proceed up the slip her stern swung down towards Commerce Wharf and she struck the outermost of four barges berthed against the wharf; the two outer ones and the one next the wharf were uninjured, but libelant's, the third barge, was crushed.

The owner of the barge libeled the steamship; the latter by petition brought in two steamtugs, the Fred Dalzell and the Lewis Pulver, which were assisting the steamship to make her berth.

The tug Dalzell had a line to the steamship's bow and was towing her in; the latter using her steam from time to time to check headway, when her pilot, who was on the bridge, thought they were moving too fast. We have no doubt from the testimony that he was in general charge of the operation, although he gave no particular orders to the Dalzell as to her maneuvers, because, as he says, "she was doing the proper thing." He admits that he did give an order to the Pulver which was fast to the steamship's starboard quarters with a line which led from the Pulver's stern; the object of course being to hold the steamship up against the wind. We do not find that there was fault in undertaking to make the particular berth, which had been assigned to the Fagelund in the basin, although, as frequently happens, there were many other vessels in the basin. Some of these were moved while she lay still waiting for this to be done, in order to facilitate the maneuver, and if carefully carried out the docking would have been successfully accomplished. Evidently some negligence brought the steamship into contact with the barges, and for the damages sustained therefrom she must respond to libelant.

The steamship brought in both tugs, alleging that the collision resulted from their negligence. No fault is shown on the part of the Dalzell; as the pilot in charge of the Fagelund says, "he did the proper thing." To determine as to the alleged fault of the Pulver it is necessary first to settle two disputed questions of fact. There is a conflict of testimony as to the exact location of the four barges on the front of Commerce Wharf; some witnesses locate them well to the right-hand, in the slip, and somewhat further in than the end of Pier 36. If so located, since Pier 36 was shedded, they might not have been seen from an incoming vessel until about to make the turn into the slip. We concur, however, with the District Judge in the finding that they lay off Commerce street or even to the left of it towards Pier 35. There they would not be obscured by the shed on Pier 36. No doubt when the steamship passed through the gap into the basin there were two barges lying at the end of Pier 36, but before she began to maneuver to enter the slip these were removed. The District Judge so finds and the testimony supports his finding. We do not, however, concur with his conclusion that the wind was so strong that, as the steamship

turned in for the slip presenting her quarter to the wind, the Pulver was pulled over with the steamship. Undoubtedly the wind did set the steamship over, but that was not because the wind was too strong for the Pulver but because the Pulver suddenly and unexpectedly ceased pulling against it at the critical moment when her power was most needed. That she did cease pulling just at this time is the testimony not only of other witnesses but also of her own master. So long as she kept on pulling she held the steamship up. She did not cease pulling because the pilot ordered her to do so or even because she thought he gave such order. Her master says he did it on his own initiative, and without giving any notice that he was going to let go. This being so, we do not see how the pilot or the steamship can be held in fault because, without any order, the Pulver ceased doing what she was hired to do, what she had been told to do, what she had been doing, and what it was. to be expected she would continue to do until otherwise directed.

The fact being, as we have found, that there were no longer two. barges at the end of Pier 36, and that the four barges lay at the foot of Commerce street (or further even to the left), it seems physically impossible that the condition of affairs was such that she could no longer keep pulling the stern up against the wind, which is her only excuse for stopping such pull without being ordered so to do.

It seems to us that she was clearly in fault and that, even if the pilot was in charge, he was not in fault for undertaking to carry out a maneuver which, so far as we can see, would have been safely accomplished if one of the tugs he was using for the purpose had not failed to do what he had every reason to suppose she would do, without any orders from him to cease doing it.

The decree should be modified so as to be primarily against the tug Pulver, and for any deficiency only against the steamer, with costs of this appeal to the Fagelund against the Pulver.